UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN MAY JACKSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 14-13323

HON. PATRICK J. DUGGAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Dawn May Jackson ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings

## PROCEDURAL HISTORY

On April 26, 2011, Plaintiff filed an application for SSI, alleging disability as of

March 1, 2010 (Tr. 132).  After the initial denial of benefits, Plaintiff requested an administrative hearing, held on November 14, 2012 in Livonia, Michigan before Administrative Law Judge ("ALJ") Henry Perez, Jr. (Tr. 47).  Plaintiff, represented by attorney John Searles, testified (51-76), as did Vocational Expert ("VE") Dr. Lois Brooks (Tr. 76-81).  On January 25, 2013, ALJ Perez found Plaintiff not disabled (Tr. 42-43).  On June 27, 2014, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed suit in this Court on August 26, 2014.  *Docket #1.*

## BACKGROUND FACTS

Plaintiff, born January 13, 1975, was 38 when the ALJ issued his decision (Tr. 43, 132).  She completed two years of college and worked previously as a chore provider, clerk, and certified nursing assistant ("CNA") (Tr. 156).  She alleges disability as a result of back pain, Attention Deficit Disorder ("ADD"), depression, and panic attacks (Tr. 155).

 **A.** **Plaintiff's Testimony**

Plaintiff offered the following testimony:

She last worked in 2007 (Tr. 52).  Her low back condition took a downturn at the time of her daughter's February, 2010 birth (Tr. 52).  She received conservative treatment until undergoing surgery in December, 2010 (Tr. 53).  She initially experienced an improvement until two months after surgery at which time the back pain and radiating left leg pain and numbness dramatically worsened (Tr. 53-54).  A post-operative MRI study showed the presence of a cyst (Tr. 55).  She had been told that the back pain was the result of the cyst,

scar tissue, and arthritis (Tr. 57). She was unable to finish a course of physical therapy due to back pain (Tr. 57-58).

Plaintiff took Morphine Sulfate, Oxycontin, and Motrin for back pain (Tr. 59). While the pain medication initially caused the side effect of drowsiness, her body had "adjusted" to the medication regimen (Tr. 59). The medication reduced but did not eliminate her pain (Tr. 60). She took between one and three naps each day lasting between 20 and 60 minutes (Tr. 60). Back pain required her to sit leaning to the right (Tr. 61). She walked with a limp due to left leg problems (Tr. 62). She was unable to walk more than 30 minutes at a time (Tr. 62). She was unable to stand upright for any length of time, but could stand listing to the right for up to 30 minutes (Tr. 62, 65). She was able to sit for up to 30 minutes provided that she leaned to the right (Tr. 66). She was unable to lift even five pounds (Tr. 66). She experienced exacerbations of pain approximately four times a week lasting anywhere from three hours to a full day (Tr. 67). She coped with such episodes by taking Motrin, using a heating pad, and reclining (Tr. 67).

Plaintiff was treated for depression "years ago" at which time she took Cymbalta (Tr. 68). She had not received a diagnosis of ADD but believed that she had the condition (Tr. 68). She was forgetful and often forgot to complete scheduled household chores or paperwork (Tr. 70). On occasions, she "panic[ed]" at the thought of going to the store (Tr. 71). During depressive episodes, she would typically stay in her pajamas all day (Tr. 72). Her mother suffered from panic attacks and depression (Tr. 72). She began psychological

counseling approximately two weeks before the hearing (Tr. 73). She experienced panic attacks both at home and in public approximately once a week (Tr. 75). Back problems prevented her from engaging in her former pastimes of swimming and walking (Tr. 76). She had not driven since her licence was suspended for the non-payment of traffic tickets (Tr. 74).

  B.  **Medical Evidence**

    **1. Treating Sources**

In June, 2009, neurologist Frank Schinco, M.D. diagnosed Plaintiff with mild lumbar radiculopathy, recommending epidural nerve blocks (Tr. 333). In September, 2010, Dr. Schinco noted Plaintiff's reports of worsening back pain (Tr. 334). She demonstrated full strength in all extremities (Tr. 335). Dr. Schinco recommended conservative treatment (Tr. 291). In December, 2010, an MRI showed a large synovial cyst at L5-S1 (Tr. 259). Treating notes the same month by Charles Ellsworth, D.O. state that Plaintiff was "hyper" and "nervous" but responded well to reassurance regarding upcoming lumbar surgery (Tr. 279). Later the same month, Plaintiff underwent a hemilaminotomy and the partial excision of the synovia cyst (Tr. 257, 261, 284-285, 341-342, 433-434). She was restricted to lifting 10 pounds or less (Tr. 258, 344). In February, 2011, Plaintiff reported an exacerbation of back pain after lifting her three-year-old son (Tr. 280). A March, 2011 MRI of the lumbar spine showed a broad-based protrusion affecting the S-1 nerve root with a remaining synovia cyst at L5-S1 (Tr. 267). Plaintiff sought emergency treatment for back pain, noting that "nothing"

relieved her back pain (Tr. 302). She was given Dilaudid before being released (Tr. 304). (Tr. 351). In April, 2011, Plaintiff reported shooting left leg pain and that her discomfort was worse than before surgery (Tr. 282). Dr. Schinco offered to perform followup surgery (Tr. 350). The same month, neurologist Naman A. Salibi noted Plaintiff's report that she used Lortab, Vicodin, and Motrin to relieve back pain (Tr. 294). An examination of the upper extremities was unremarkable (Tr. 296). Plaintiff squatted with difficulty but was able to walk on "tiptoes" and heels (Tr. 296). Dr. Salibi noted that a recommendation for future surgical intervention was "most likely" (Tr. 297, 362). A May, 2011 EMG of the lower extremities was unremarkable (Tr. 299). The same month, Plaintiff sought emergency treatment, reporting that she twisted her back and was unable to obtain medicine from her physician (Tr. 312). A CT of the lumbar spine showed a "broad-based disc bulge" causing severe stenosis at L5-S1 (Tr. 318, 364).

In August, 2011, emergency room records show mild tenderness of the left lower paralumbar area with left leg pain (Tr. 367). The following month, she reported "constant" back pain (Tr. 375). Treating notes state that she was making "excuses" for not having an updated MRI (Tr. 378). A November, 2011 MRI of the lumbar spine was essentially unchanged from earlier studies (Tr. 369, 388, 426). In January, 2012, Plaintiff reported that she had been out-of-town "a lot" in the past month (Tr. 401). In March, 2012, she reported reduced pain after an epidural pain block but increased pain the following month (Tr. 406-407). In May, 2012, Plaintiff reported that she was unable to get a ride to physical therapy

(Tr. 408). June, 2012 treating notes by Mazher Hussain, M.D. note Plaintiff's report of left leg numbness (Tr. 371). Plaintiff denied medication side effects (Tr. 371). Dr. Hussain recommended epidural nerve blocks, and the continued use of oxycodone and morphine (Tr. 372). Plantiff was prescribed physical therapy in October, 2012 (Tr. 436). A December, 2012 Medical Source Statement regarding Plaintiff's psychological limitations states that she experienced no more than slight concentrational problems (Tr. 445, 447).

### 2. Non-treating Sources

In August, 2011, Bruce Fowler, Psy.D. performed a psychological examination of Plaintiff on behalf of the SSA, noting Plaintiff's report that she experienced PMS at which times she isolated herself, felt sad, and stayed in her pajamas all day (Tr. 325). She also reported anxiety characterized by nausea, hyperventilation, and hysteria (Tr. 325). She acknowledged that she had not received a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD") (Tr. 325). She denied the use of illegal drugs or the excessive use of alcohol (Tr. 326). Dr. Fowler observed that Plaintiff appeared anxious, "fidgety and even frenetic at times" (Tr. 327). She appeared fully oriented and was able to perform serial 3's and 7's (Tr. 328). Dr. Fowler assigned Plaintiff a GAF of 52,[1] noting that she was "able to understand and follow fairly complex directions" (Tr. 329).

---

[1] A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*") 34, (4th ed.2000).

The same month, Edward J. Brophy completed a non-examining disability determination on behalf of the SSA (Tr. 95). He found that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 90). As to postural limitations, he found that Plaintiff could climb ramps or stairs frequently, and balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds on an occasional basis (Tr. 90). He found the absence of additional physical limitations (Tr. 91).

Also in August, 2011, Judy Strait, Psy., L.P. completed a non-examining assessment of the treating records, finding that Plaintiff experienced mild restriction of activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace (Tr. 88). She found that Plaintiff would "have difficulty with detailed tasks" and might "not work well with the general public" (Tr. 93). She found that Plaintiff could perform "routine, 2-step tasks on a sustained basis" (Tr. 93).

In November, 2012, Dawn Bane Gventer, Psy.D noted Plaintiff's report of panic attacks up to five times each month (Tr. 450). Plaintiff appeared fully oriented but "sat in an awkward position on the couch" due to "visible pain" (Tr. 451). She assigned Plaintiff a GAF of 48[2] due to primarily physical problems, noting that the functional impairments were due to the "medical ailments" (Tr. 452).

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV–TR* at 34.

C.    **Vocational Expert Testimony**

VE Dr. Lois Brooks classified Plaintiff's former work as a home attendant and CNA as exertionally medium[3] and semiskilled and clerical work, light/semiskilled (sedentary as performed)(Tr.77-78).

The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [A]ssume that such a person has an exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently, sitting, standing, walking six hours. There's occasional climbing ladders, ropes, and scaffolds, occasionally stooping, crouching, kneeling, and crawling. Jobs that would allow for routine production or stress, simple job assignments, occasional contact with the public, and jobs where the individual could perform routine two step tasks on a sustained basis. Putting this individual at the unskilled level. Could such a person be able to perform Claimant's past relevant work? (Tr. 64).

The VE replied that the above limitations would preclude Plaintiff's past relevant work, but would permit the light, unskilled work of an assembler (22,000 jobs in the State of Michigan) packager (13,000); and visual inspector (Tr. 6,000) (Tr. 78). The VE testified

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

that if Plaintiff's testimony regarding her exertional limitations were fully credited, she would be able to perform the sedentary jobs of assembler (6,000 in the State of Michigan); sedentary visual inspector (3,000); and packager (4,200) (Tr. 79). However, the VE testified that if Plaintiff's testimony regarding the non-exertional limitations of pain, concentrational problems, and panic attacks were credited, no work would be available (Tr. 80). In response to questioning by Plaintiff's attorney, the VE testified that the need to recline at unpredicted times or, more than one workday absence each month would preclude all competitive employment (Tr. 81).

### D. The ALJ's Decision

Citing the medical records, ALJ Perez determined that Plaintiff experienced the severe impairments of "spine disorder; affective disorder; and anxiety disorder" but that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 30). He found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 31).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform unskilled, exertionally light work with the following limitations:

> [S]he can lift 20 pounds occasionally and 10 pounds frequently. She can stand/walk for six hours in an eight-hour day; and sit for six hours in an eight-hour day. She can occasionally climb ladders, ropes, and scaffolds. She is limited to occasional stooping, crouching, kneeling, and crawling. Claimant is limited to jobs that provide for routine production and stress; simple job assignments; jobs that involve only occasional contact with the public; and

routine two-step tasks on a sustained basis (Tr. 32-33).

Adopting the VE's job numbers, the ALJ found that although Plaintiff was unable to perform any past relevant work, she could perform the exertionally light work of an assembler, packager, and visual inspector and the sedentary jobs of assembler, visual inspector, and packager (Tr. 43, 78-79).

The ALJ discounted Plaintiff's alleged degree of physical and psychological limitation (Tr. 33-42). He cited Dr. Schinco's September, 2010 neurological examination notes showing a good range of motion and muscle strength (Tr. 34). He noted that 2011 EMG and nerve conduction studies were normal (Tr. 36-37). He cited May, 2011 emergency room records showing that Plaintiff demonstrated a normal gait (Tr. 36). He observed that Plaintiff was able to take a vacation in January, 2012 (Tr. 37). He noted that she reported good results from an April, 2012 epidural injection (Tr. 37).

The ALJ noted that consultative psychological examination notes showed that Plaintiff was able to "understand and follow fairly complex directions" (Tr. 39). The ALJ discounted Dr. Gventer's finding of serious psychological symptoms on the basis that it was supported mostly by Plaintiff's subjective complaints (Tr. 39-40). He found that Plaintiff's ability to go on vacation since the alleged onset of disability undermined her claims of extreme limitation (Tr. 40). The ALJ observed that Plaintiff was able to care for her young children, perform light household chores, and manage her finances (Tr. 40). He noted that she denied significant medication side effects (Tr. 41).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the ALJ's determination was not supported by substantial evidence. *Plaintiff's Brief,* 17-30, *Docket #14.* She disputes the ALJ's conclusion that her testimony was not credible, arguing that the erroneous omission of her professed limitations from the hypothetical question tainted the VE's job testimony. *Id.* She contends that her allegations of physical and psychological limitation were amply supported by the treating and consultative record. *Id.*

### A. The Physical Limitations

In support of the credibility determination, the ALJ discounted Plaintiff's claims of physical limitations by noting that she was able to take a vacation since the alleged onset of

disability (Tr. 40). He noted that Plaintiff was able to "care for young children at home, which can be quite demanding both physically and emotionally" (Tr. 40). The ALJ cited Plaintiff's acknowledgment that she watched television with her children and read to them (Tr. 40). He noted that she was able to cook, albeit from a sitting position, do "small loads of laundry," and "shop for necessities" (Tr. 40). The ALJ noted that in November, 2011, Plaintiff made "'many excuses'" for her failure to procure an updated MRI (Tr. 37, 378). He noted that in March, 2012, Plaintiff was "refused by Dr. Best for pain management" with "no explanation" for the refusal (Tr. 37). He also cited treating records showing that Plaintiff's pain was controlled with medication and that she denied medication side effects (Tr. 41).

It is well settled that "an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007)*(citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Nonetheless here, the ALJ's rationale for discounting Plaintiff's physical limitations

is not well supported or articulated.[4] Although the ALJ found that Plaintiff's ability to "take a vacation" undermined the disability claim, the cited January, 2012 record states only that she "was out of town a lot [that] month" (Tr. 37, 40, 401). Moreover, assuming that Plaintiff took a vacation, the ALJ did not question her as to the length of the vacation or her level of activity during her travel. Likewise, Plaintiff's acknowledgment that she was able to watch television with her children and read to them does not support his conclusion that she was able to lift 20 pounds occasionally or walk up to six hours in an eight-hour (Tr. 32-33, 40).

The ALJ's observation that Plaintiff made "many excuses" for delaying a recommended followup MRI implies that she avoided undergoing studies which would refute her subjective complaints. However, the MRI ultimately performed in November, 2011 supports rather than undermines her claim of significant exertional and postural limitations due to back pain (369). It is unclear why the ALJ believed that Plaintiff's delay of the imaging study undermined her credibility. Likewise, while the ALJ placed some import on the fact she was at one point denied pain clinic treatment (apparently implying that she did not require treatment or was abusing prescribed pain medication), none of the treating

---

[4] The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.*

records state or even suggest such a conclusion. Although the treating records show that pain medication provided *some* relief, none of the records contradict Plaintiff's testimony that she continued to experience significant, ongoing back pain despite the use of opiates (Tr. 60, 280, 282, 302, 375, 406-407, 372). The ALJ's rationale for the credibility determination is particularly inadequate when weighed against numerous objective studies supporting Plaintiff's allegations of limitation (Tr. 297, 318, 369).

      The ALJ's heavy reliance on Dr. Brophy's August, 2011 non-examining conclusion that Plaintiff was capable of a range of light work is also of concern (Tr. 36). Dr. Brophy's review of the treating records cites May 17, 2011 emergency room notes stating that Plaintiff was able to walk to the bathroom without assistance (Tr. 87). However, Dr. Brophy's summation of the May, 2011 records does not acknowledge a CT study (attached to the same emergency room records) showing the presence of a "broad-based disc bulge" causing "severe" stenosis at L5-S1 (Tr. 318). While Dr. Brophy was not required to restate all the records, it is impossible to reconcile his finding that Plaintiff was capable of climbing ropes and scaffolds up to one-third of an eight-hour workday (based only on Plaintiff's ability to walk to a bathroom) with the CT study showing severe stenosis (Tr. 90).

      Further, Dr. Brophy did not have benefit of records created between September, 2011 and December, 2012. As a rule, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion

on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The records post-dating Dr. Brophy's assessment show that Plaintiff's condition continued to worsen: September, 2011 ("constant" back pain); November, 2011 (MRI showing continued nerve root involvement at L5-S1); March, 2012 (only short term improvement from epidural injections); June, 2012 (left leg numbness) (Tr. 371, 375, 388, 406-407). The increased weight accorded to updated medical information is especially appropriate here, where in contrast to Dr. Brophy's findings, the newer evidence was created by treating and examining sources. *See Sayles v. Barnhart,* 2004 WL 3008739, \*23 (N.D.Ill. December 27, 2004) (adoption of "outdated and inadequate" non-treating findings created prior to a diagnosis of diabetes grounds for remand).

The inadequately supported credibility determination and adoption of Dr. Brophy's assessment undermines the ALJ's Step Five Findings. The hypothetical question forming the basis for the VE's job findings is drawn directly from Dr. Brophy's August, 2011 assessment (*compare* Tr. 78, 90). The adoption of the questionable findings, coupled with the poorly supported rejection of Plaintiff's allegations, casts doubt on the ALJ's choice of hypothetical limitations. It is well settled that the failure to include all of a claimant's relevant limitations in the hypothetical question invalidates the vocational testimony. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). As as result, the VE's job findings are tainted by both the erroneous credibility determination and Dr. Brophy's incomplete and outdated findings.

Moreover, the fact that the ALJ posed a second hypothetical question to the VE including all of Plaintiff's professed exertional limitations does not cure the error (Tr. 43, 79). The VE testified that if Plaintiff's alleged inability to lift more than five pounds were credited, she would be capable of a significant range of sedentary work (Tr. 79). However, the VE testified that if Plaintiff's professed need to lie down for significant portions of the day as a result of back pain were credited, all gainful employment would be eliminated (Tr. 80). The ALJ's failure to articulate a well supported rationale for rejecting these claims warrants remand.

### B. Plaintiff's Other Arguments for Remand

In contrast, the remaining arguments do not provide a basis for remand. Plaintiff's argument that she is disabled under Listing 1.04A is not well taken. Subsection A of Listing 1.04 (disorders of the spine) requires evidence, among other limitations, evidence of "motor loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Plaintiff's concession that she did not experienced motor loss defeats this argument. *Plaintiff's Brief* at 25. While she argues that her condition "at the very least" "equals" Listing 1.04A, she does not offer any specifics as to how she "equals" the Listing. While as noted above, the ALJ's over-reliance on Dr. Brophy's findings (combined with other errors) provides grounds for remand, Plaintiff has not explained why Dr. Brophy's finding that she did not equal a Listing should be challenged.

Likewise, Plaintiff's contention that she met Listings 12.04 (affective disorders) and

12.06 (anxiety disorders) is unavailing. Both Listings require a showing of at least two "marked" deficiencies in the categories of activities of daily living, social functioning, and concentration, persistence, or pace.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 1206. The ALJ found that Plaintiff experienced only mild limitation in activities of daily and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 31). In support of his finding that Plaintiff did not meet or equal a psychological Listing, the ALJ noted that Plaintiff was able to perform personal care and light housekeeping activities and interact well with her husband, children, and other family members (Tr. 31). The ALJ noted that while Plaintiff experienced some degree of concentrational impairment, the condition did not prevent her from completing two years of college and reading to her children (Tr. 31). Because the ALJ's assessment of Plaintiff's psychological conditions is supported by substantial evidence, a remand on this basis is not warranted.

In closing, I note that for the reasons set forth in section **A.**, a remand is required. Still, because the present transcript does not present an "overwhelming" case for disability, it is appropriate for the ALJ, rather than this Court, to determine if Plaintiff is entitled to benefits based on the present record. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir.1994). Accordingly, I recommend that the case be remanded to the

---

[5] Alternatively, the Listings can be met with one marked limitation combined with "repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.04, 12.06. Because Plaintiff does not allege even one episode of decompensation, she cannot meet either Listing on this basis.

administrative level for further proceedings consistent with the above findings.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

2:14-cv-13323-PJD-RSW   Doc # 17   Filed 06/19/15   Pg 20 of 20   Pg ID 579

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: June 19, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 19, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen